NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (4th) 251112-U

NO. 4-25-1112

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 24, 2026
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* ESTATE OF KATHLEEN E. BORGENS, a Disabled Person | ) ) ) | Appeal from the Circuit Court of Scott County |
| (John C. Borgens,       Petitioner-Appellant,       v. | ) ) ) | No. 24GR5 |
| Susan L. Kinser,       Respondent-Appellee). | ) ) ) | Honorable Zachary A. Schmidt, Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices Knecht and Vancil concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The appellate court dismissed the appeal for lack of jurisdiction.

¶ 2       Petitioner, John C. Borgens, appeals from the dismissal of his "Petition for Review of Plenary Guardian's Conduct" in the guardianship proceedings concerning his former spouse, Kathleen E. Borgens. We dismiss the appeal for lack of jurisdiction.

¶ 3                                    I. BACKGROUND

¶ 4       These guardianship proceedings commenced on May 28, 2024, when respondent, Susan L. Kinser, petitioned for the appointment of a guardian for her daughter, Kathleen, due to temporary medical incapacitation. On June 20, 2024, the trial court appointed Kinser as Kathleen's temporary guardian, and it subsequently appointed her as Kathleen's plenary guardian on December 17, 2024. On June 16, 2025, Borgens, Kathleen's ex-husband, filed a "Petition for

Review of Plenary Guardian's Conduct," arguing that there was an issue with the sale of Kathleen's house, which he alleged was marital property. Kathleen's guardian *ad litem* (GAL), Robert V. Bonjean III, moved to dismiss the petition, as Borgens was not a party to the guardianship proceedings and thus lacked standing to file pleadings in the guardianship case. The GAL contended that Borgens was a party in Scott County case No. 22-DC-8, the dissolution of marriage case between him and Kathleen, which was still pending, and that the proper venue for him to obtain information related to Kathleen's assets was through the divorce proceeding, not the guardianship case.

¶ 5        At a hearing on the motion to dismiss Borgens's petition on October 14, 2025, the GAL explained,

> "[T]he basis of my Motion to Dismiss is that since he lacks standing, you know, if he filed a Petition to Intervene and there was not the divorce case pending, I would probably not object to his Petition to Intervene and indicate that he is entitled to, um, information related to the sale of the property, but saying that, I don't want to see litigation that could easily occur and should be occurring in the divorce case be brought into the guardianship case."

The trial court ruled,

> "[P]art of *** being a guardian of an individual of this nature is also to *** protect their privacy so, if you are, in fact, on a fishing expedition that could be done through a divorce case then the guardian is acting in *** the best interest of the disabled person in protecting her privacy interest.
>
> With that being said, *** I'm going to dismiss your petition for review."

The court's order dismissing Borgens's petition did not indicate whether the dismissal was with

or without prejudice. The order also did not include the special findings outlined in Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016).

¶ 6        This appeal followed.

¶ 7                        II. ANALYSIS

¶ 8        "Before addressing the merits of this appeal, we have an obligation to determine whether we have jurisdiction, even though the issue was not raised by the parties." *In re Estate of Mueller*, 275 Ill. App. 3d 128, 138 (1995). The Illinois Constitution gives the appellate court jurisdiction to review final judgments. Ill. Const. 1970, art. VI, § 6. To be considered final, "an order or judgment must terminate the litigation between the parties on the merits or dispose of the rights of the parties, either on the entire controversy or a separate part thereof." *In re Haley D.*, 2011 IL 110886, ¶ 61. "[Illinois Supreme Court] Rule 301 governs appeals from cases in which a final order has disposed of the entire controversy, and Rule 303 sets forth the requirements that must be met for the preparation and filing of appeals from final judgments in civil cases." *In re Alexis H.*, 335 Ill. App. 3d 1009, 1012 (2002). See Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); Ill. S. Ct. R. 303 (eff. July 1, 2017). Alternatively, Rule 304 governs appeals from final judgments that do not dispose of an entire proceeding. Ill. S. Ct. R. 304 (eff. Mar. 8, 2016). Under Rule 304(a), "an appeal may be taken from a final judgment as to one or more but fewer than all of the parties or claims only if the trial court has made an express written finding that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016). Rule 304(b)(1), in turn, allows for appeals without the special finding required by 304(a) from a judgment or order "entered in the administration of an estate, guardianship, or similar proceeding which finally determines a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016).

¶ 9        Borgens indicated in his notice of appeal, and Kinser did not contest, that we have jurisdiction over this appeal under Rules 301 and 303. However, Rule 301 applies only to "appeals from cases in which a final order has disposed of the entire controversy." *Alexis H.*, 335 Ill. App. 3d at 1012. In this case, the dismissal of Borgens's petition did not terminate the guardianship proceedings and was thus not a final judgment under Rule 301. Rule 304(a) is also inapplicable, as the trial court did not make special findings "that there is no just reason for delaying either enforcement or appeal or both." Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016).

¶ 10        The only remaining possibility for jurisdiction is Rule 304(b)(1), as this order was entered in a guardianship proceeding. See Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). However, we ultimately lack jurisdiction under Rule 304(b)(1) because the order dismissing Borgens's petition did not "finally determine[ ] a right or status of a party." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016).

¶ 11        First, to be appealable, a judgment or order must "finally determine[ ] a right or status." Ill. S. Ct. R. 304(b)(1) (eff. Mar. 8, 2016). An order of dismissal with prejudice is a final and appealable order, while one "which specifies that it is 'without prejudice' is nonappealable on its face." *McMann v. Pucinski*, 218 Ill. App. 3d 101, 106 (1991). If, however, "the trial court did not include either language in its order of dismissal," "it is necessary to look to the substance of what was actually decided by the dismissal order to determine if the order is a final and appealable one." *McMann*, 218 Ill. App. 3d at 106. To be final under Rule 304(b)(1), an order "must resolve all matters on the particular issue." (Internal quotation marks omitted.) *Cushing v. Greyhound Lines, Inc.*, 2012 IL App (1st) 100768, ¶ 84. The Committee Comments to Rule 304(b)(1) explain that the rule "applies to orders that are final in character although entered in comprehensive proceedings that include other matters. Examples are an order admitting or refusing to admit a will to probate, appointing or removing an executor, or allowing or disallowing a claim." Ill. S. Ct. R.

304(b)(1), Committee Comments (rev. Sept. 1988); see *In re R.J.*, 2022 IL App (1st) 211542, ¶ 50 (holding that an "order denying leave to intervene was clearly a final judgment," as it "finally determined the rights of the foster parents—they could not intervene in the proceeding here"); see also *Mueller*, 275 Ill. App. 3d at 139 (stating that the trial court's order denying a petition to intervene "finally determine[d] [appellant's] right to participate in the estate proceedings").

¶ 12 In this case, the trial court's order of dismissal did not specify whether it was with or without prejudice. We must thus look at the substance of what was decided. See *McMann*, 218 Ill. App. 3d at 106. The dismissal order did not finally resolve all matters on any issue, as it did not determine Borgens's standing, his right to intervene in the guardianship proceeding, or the claims in his petition. This order is therefore not like those enumerated in the Committee Comments to Rule 304(b)(1) and is not "final in character." Ill. S. Ct. R. 304(b)(1), Committee Comments (rev. Sept. 1988). Though the GAL argued that Borgens lacked standing, he acknowledged that he would not object to a petition to intervene filed by Borgens if the divorce case between him and Kathleen was not still pending, as he would have standing to intervene under those circumstances. The court ultimately dismissed Borgens's petition, not on standing grounds, but on the grounds that the guardianship proceeding was not an appropriate venue for this litigation, given the concurrently pending divorce proceeding. Both the GAL and the court's statements imply that if the divorce proceeding were no longer ongoing, Borgens would have a right to return and intervene in the guardianship proceeding to litigate the issue of the sale of the house, which implies that the dismissal of his petition was without prejudice. Because the court did not finally determine the issue of Borgens's standing or his right to intervene in the guardianship proceeding and implied that the dismissal was without prejudice, this order was not final and appealable.

¶ 13 Moreover, Borgens was not a "party" to the guardianship proceedings and did not seek to become one. See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) (authorizing appeals without special findings in guardianship proceedings from a judgment or order finally determining the right or status of a "party"). That makes this case distinct from others in which appellate courts have had jurisdiction over an appeal from a denial of a petition to intervene under Rule 304(b)(1). The First District has previously explained that it had jurisdiction over an appeal from the denial of a petition to intervene under Rule 304(b)(1) because, although Rule 304(b)(1) discusses the right of a *party*, this language "has never stopped this court from finding jurisdiction over appeals by would-intervenors who were *denied* party status." (Emphasis in original.) *R.J.*, 2022 IL App (1st) 211542, ¶ 56; see *Mueller*, 275 Ill. App. 3d at 139 (holding that the court had jurisdiction over an order denying a petition to intervene in estate proceedings under Rule 304(b)(1)).

¶ 14 In this case, however, Borgens did not seek party status by filing a petition to intervene. See 735 ILCS 5/2-408(e) (West 2024) ("A person desiring to intervene shall present a petition setting forth the grounds for intervention, accompanied by the initial pleading or motion which he or she proposes to file."); see also *Estate of Snisko*, 2024 IL App (1st) 221281-U, ¶ 48 ("As [appellant] is not a petitioner, cross-petitioner, respondent, or guardian in the instant matter, the proper procedure would be to file a motion for leave to intervene pursuant to section 2-408 of the Code [of Civil Procedure]."). As a result, Borgens cannot be considered a party or a "would-intervenor[ ] who w[as] denied party status" (emphasis omitted) (*R.J.*, 2022 IL App (1st) 211542, ¶ 56) for purposes of our jurisdiction over this appeal under Rule 304(b)(1). Borgens simply filed a petition in a case where he was not a party. As the requirements of Rule 304(b)(1) have not been satisfied, this court lacks jurisdiction over this appeal.

¶ 15                                      III. CONCLUSION

¶ 16        For the reasons stated, we dismiss the appeal for lack of jurisdiction.

¶ 17        Appeal dismissed.